UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 16-20862-CIV-MORENO

NAPA OVERSEAS, S.A.,

    Plaintiff,

vs.

NEXTRAN CORPORATION,

    Defendant.
_____/

## ORDER DENYING MOTION TO DISMISS

THIS CAUSE came before the Court upon Defendant's Motion to Dismiss Complaint (**D.E. 14**), filed on **June 18, 2016**.

THE COURT has considered the motion, the response in opposition, the reply, the pertinent portions of the record, and is fully advised in the premises. It is

**ORDERED AND ADJUDGED** that Defendant Nextran Corporation's motion to dismiss is **DENIED** for the reasons put forth in this Order.

### I.   BACKGROUND

Plaintiff Napa Overseas S.A. ("Napa") alleges nine (9) counts against Defendant Nextran Corporation ("Nextran"). These nine counts consist of the following: breach of contract (Count 1), promissory estoppel (Count 2), tortious interference with an existing relationship (Count 3), tortious interference with prospective relations (Count 4), tortious interference with existing business relations (Count 5), unjust enrichment (Count 6), fraudulent misrepresentation/ concealment (Count 7), negligent misrepresentation (Count 8), breach of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count 9).

Napa alleges that it participated in an invitation only closed-bidding process to contract with a Venezuelan government-owned corporation called La Corporación de Abastecimiento y Servicios Argícolas, La CASA, S.A. ("CASA"). CASA sought to purchase one hundred trucks with unique specifications ("the Specified Trucks"). After the bidding process, Napa contacted Nextran to determine whether Nextran could supply the Specified Trucks. Nextran informed Napa that it could provide the Specified Trucks for the price of $114,363 per truck, for a total price of $11,436,300. Based on Nextran's quoted total price, Napa placed a bid with CASA to provide one hundred Specified Trucks for $14,545,320. CASA then awarded the contract to Napa based on its bid price. Napa then informed Nextran of the awarded contract and Nextran agreed to produce the Specified Trucks. Prior to signing the awarded contract however, CASA informed Napa that Nextran had submitted an unsolicited bid for the Specified Trucks at a lower price than Nextran had quoted to Napa. As a result, Napa was forced to reduce its bid price from $14,545,320 to $13,798,400—a 21% reduction in expected profits. Based on the newly reduced bid price, CASA re-awarded the contract to Napa. Napa then placed an order with Nextran for the Specified Trucks based on the reduced bid price and transferred $500,000 to Nextran as a deposit. CASA and Napa then executed a purchase agreement for one hundred Specified Trucks. The agreement established a two-part delivery schedule. The first delivery of fifty-four Specified Trucks was scheduled to be completed upon the execution of Napa and Nextran's supplier agreement. The delivery of the remaining forty-six Specified Trucks was scheduled to be completed forty-five days after the initial delivery. Upon Napa and Nextran's executed supplier agreement, Nextran shipped only fourteen vehicles to Napa, thirteen of which did not comply with contract specifications. Although Nextran later brought the thirteen vehicles into conformity with the contract, the repairs were made after the delivery schedule had expired. Additionally,

and unbeknownst to Napa, Nextran sold thirty of the Specified Trucks to another company. Nextran never delivered the remaining eighty-six Specified Trucks to Napa. Consequently, CASA rescinded the purchase agreement with Napa. Based on Nextran's breach of the supplier agreement, Napa requested a return of its deposit. Nextran refused to return Napa's deposit, claiming that it was non-refundable.

## II. LEGAL STANDARD

Nextran argues that Napa's eight-count complaint must be dismissed for failure to state a claim on which relief can be granted.

"To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions," instead plaintiffs must "allege some specific factual basis for those conclusions or face dismissal of their claims." *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1263 (11th Cir. 2004). When ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true. *See St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 953 (11th Cir. 1986). This tenet, however, does not apply to legal conclusions. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Moreover, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 1950. Those "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). In short, the complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id* at 544.

Federal Rule of Civil Procedure 9(b) must be satisfied, in addition to the more relaxed standard of Rule 8, when a cause of action sounds in fraud. Under Rule 9(b), "a party must state

3

with particularity the circumstances constituting fraud or mistake," although "conditions of a person's mind," such as malice, intent, and knowledge may be alleged generally. Fed. R. Civ. P. 9(b). "The 'particularity' requirement serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008) (citations omitted).

### III.  ANALYSIS

#### A. Jurisdiction

As a preliminary matter, the Court must determine whether it has jurisdiction over this case. Nextran argues that "there is not subject matter—diversity of citizenship—jurisdiction" because an entity disclosed in exhibits to the complaint, NAPA Overseas, Inc., is a Florida corporation. (D.E. 14 at 5). Napa responds that "NAPA Overseas, Inc. is neither a party to this case nor a party to the contracts or conduct at issue. Plaintiff Napa, on the other hand, is a Panamanian (*i.e.*, foreign) corporation." Napa further asserts that "the Court has subject-matter jurisdiction over this action on the basis of diversity of citizenship." (D.E. 19 at 15).

District courts have original jurisdiction of all civil actions where the matter in controversy is between citizens of a State and citizens of a foreign state and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(2). Here, Plaintiff Napa is a Panamanian Corporation, with its principal place of business in Venezuela; Defendant Nextran is a Florida Corporation, and the amount in controversy exceeds $75,000. The Court therefore finds that it has jurisdiction over this matter.

## B. Breach of Contract (Count 1)

Nextran argues that Napa's breach of contract claim must be dismissed, in part, because "nothing in writing is attached to the Complaint indicating that CASA awarded the contract to NAPA." (D.E. 14 at 5). Napa responds that "Nextran committed multiple breaches of that agreement by, among other things, (1) missing the deadline for the first shipment of trucks, nearly all of which failed to meet the contract's specifications and required repairs; (2) failing to deliver the remaining eighty-six (86) trucks altogether; and (3) refusing to refund Napa's deposit. Napa suffered substantial financial damages as a result of these breaches." (D.E. 19 at 5) (internal citations omitted).

Under Florida law, a breach of contract claim "requires the plaintiff to plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Hearn v. IBM*, 588 F. App'x 954, 957 (11th Cir. 2014) (citing *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009)). Accordingly, "there is no requirement that the pleader attach a copy of the writing on which his claim for relief or defense is based." *Hewlett-Packard Co. v. CP Transp. LLC*, No. 12-21258-Civ Cooke/Turnoff, 2012 U.S. Dist. LEXIS 145179, at *6 (S.D. Fla. Oct. 9, 2012) (quoting 5A Charles Alan Wright, et al., *Federal Practice & Procedure § 1327* (3d ed. 1998); *see also Amerisure Ins. Co. v. S. Waterproofing, Inc.*, No. 3:14-cv-154-J-34JRK, 2014 U.S. Dist. LEXIS 131765, at *17 (M.D. Fla. Sep. 19, 2014) ("[T]he critical issue under the Federal Rules is whether [the plaintiff] has alleged a 'short and plain statement of the claim' pursuant to Rule 8(a), rather than whether the contract or document is incorporated into the Complaint"). Here Napa has alleged, and Nextran does not dispute, the existence of a contract between the parties. Napa has alleged that Nextran materially breached the contract by "[d]elivering the first shipment of trucks after the deadline

required under the Delivery Schedule of the Supplier Agreement, and requiring approximately eleven (11) additional months beyond that deadline to repair the Defective Trucks." (D.E. 1 ¶¶ 7-8). Further, Napa has alleged that "[a]s a direct and proximate result of Nextran's breaches of the Supplier Agreement . . . Napa suffered damages, including monetary damages, exceeding $75,000." (D.E. 1 ¶¶ 8).

Nextran also alleges that the allegations in the complaint and exhibits attached to the complaint are inconsistent. (D.E. 14 at 6). In response, Napa asserts that "[w]hile Nextran argues that the $500,000 deposit is 'non-refundable,' in the very next paragraph it concedes that the deposit is, in fact, refundable if—as Count I expressly alleges—Nextran 'fails to deliver the motor vehicle(s) as contemplated [in the Agreement]. The Complaint alleges that Nextran did fail to 'deliver the remaining eighty-six (86) Specified Trucks required under the Supplier Agreement." (D.E. 19 at 6) (alteration in original) (internal citations omitted). Viewing the complaint in the light most favorable to Napa, and accepting Napa's well-pleaded facts as true, the Court finds that Napa's breach of contract claim is sufficient to survive Nextran's motion to dismiss. Therefore, Nextran's motion to dismiss as to Count 1 is hereby DENIED.

### C. Promissory Estoppel (Count 2)

Nextran argues that Napa's claim for promissory estoppel "fails as a matter of law" because the complaint alleges that the parties executed a written agreement. (D.E. 14 at 7-8). Napa responds that Nextran's "argument ignores Napa's express allegations that the parties never signed any contract based on their initial negations." (D.E. 19 at 7).

Under Florida law, promissory estoppel is established "when there is (1) a promise which the promisor should reasonably expect to induce action or forbearance, (2) action or forbearance in reliance on the promise, and (3) injustice resulting if the promise is not enforced." *DK Arena,*

*Inc. v. EB Acquisitions I, LLC*, 112 So. 3d 85, 96 (Fla. 2013). Here, Napa alleges that "Nextran made a clear and unambiguous promise to Napa that it would supply Napa with the Specified Trucks for the amount in the Price Quote for Napa to use in its bid package to CASA." (D.E. 1 ¶¶ 43). Napa further alleges that "Nextran should have reasonably expected its promise to induce Napa to act in reliance by submitting its Original Bid to CASA," and that "Napa suffered injuries due to its reliance on Nextran's promise." *Id.* Viewing the complaint in the light most favorable to Napa, and accepting Napa's well-pleaded facts as true, the Court finds the promissory estoppel claim is sufficient to survive Nextran's motion to dismiss. Therefore, Nextran's motion to dismiss at to Count 2 is hereby DENIED.

### D. Tortious Interference With An Existing Contractual Relationship (Count 3)

Nextran argues that Napa's tortious interference with an existing contractual relationship claim "fails to satisfy the five requisite elements and fails to allege NAPA and CASA had an actual binding contract before NAPA came to Miami to meet with Nextran." (D.E. 13 at 9). In response, Napa asserts that Nextran mischaracterizes Count 3 because "[t]hat count seeks damages based on Nextran's intentional refusal to supply the trucks *after* Napa and Casa signed the Purchase Agreement." (D.E. 19 at 8) (emphasis in original). The Court agrees.

"A claim for interference with a contractual relationship requires: (1) the existence of a contract; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the contract's breach; (4) the absence of any justification or privilege; and (5) damages resulting from the breach." *Special Purpose Accounts Receivable Coop. Corp. v. Prime One Capital Co.*, 125 F. Supp. 2d 1093, 1103 (S.D. Fla. 2000). As discussed, *supra*, the Court finds that Napa has plausibly alleged the existence of a contract, Nextran's knowledge of the contract, and damages resulting from the breach. As to the alleged intentional procurement of the

contract's breach, Napa alleges that "Nextran—fully aware of Napa's obligations under the Purchase Agreement—refused to supply the trucks as required, for the specific, intentional purpose of destroying Nextran's contract with CASA." (D.E. 19 at 8). Nextran puts forth no justification or privilege assertions. Viewing the complaint in the light most favorable to Napa, and accepting Napa's well-pleaded facts as true, the Court finds the tortious interference with an existing contractual relationship claim is sufficient to survive Nextran's motion to dismiss. Therefore, Nextran's motion to dismiss as to Count 3 is hereby DENIED.

### E. Tortious Interference With Prospective Contractual Relations (Count 4) And Interference With Existing Business Relations (Count 5)

Nextran argues that Napa's claim for tortious interference with prospective contractual relationships fails to state a cause of action. Napa responds by asserting that Nextran's unsolicited bid to CASA, submitted before the executed purchase agreement, forced Napa to submit a new "Adjusted Bid that reduced its expected profits by over a million dollars". (D.E. 19 at 9).

"A claim for tortious interference with prospective business relationships requires a plaintiff to plead the following: (1) a business relationship or contemplated contract of economic benefit; (2) the defendant's knowledge of such a relationship; (3) the defendant's intentional and improper interference with it; and (4) the plaintiff's loss of advantage directly resulting from the defendant's conduct." *In re AOL, Inc. Version 5.0 Software Litig.*, 168 F. Supp. 2d 1359, 1381 (S.D. Fla. 2001). Napa alleges that it participated in a "closed-bidding process" based on its preexisting relationship with CASA and was awarded the contract based on the terms of its bid. (D.E. 1 ¶¶ 2-3). Napa also alleged that during its initial meeting with Nextran "the parties discussed CASA's closed-bidding process and the Specified Trucks." *Id.* ¶ 12. Napa alleges that Nextran used the information it gained from Napa about CASA and the closed-bidding process

to intentionally and improperly submit an unsolicited letter-offer to CASA, which contained a lower price than the one it proposed to Napa. *Id.* ¶ 18. As discussed, *supra*, Napa has plausibly alleged loss as a direct result of Nextran's conduct. Viewing the complaint in the light most favorable to Napa, and accepting Napa's well-pleaded facts as true, the Court finds that Napa has plausibly alleged a claim for tortious interference with a prospective contractual relationship and for tortious interference with existing business relations sufficient to survive Nextran's motion to dismiss. Therefore, Nextran's motion to dismiss as to Counts 4 and 5 is hereby DENIED.

### F. Unjust Enrichment (Count 6)

Nextran argues that Napa's claim for unjust enrichment must be dismissed because it is covered by an existing writing contract. Napa responds that it is not prohibited from pleading this claim in the alternative. The Court agrees.

"It is well settled that the law will not imply a contract where an express contract exists concerning the same subject matter." *Wilson v. Everbank, N.A.*, 77 F. Supp. 3d 1202, 1220 (S.D. Fla. 2015) (quoting *Kovtan v. Frederiksen*, 449 So. 2d 1, 1 (Fla. 2d DCA 1984)). Accordingly, unjust enrichment claims are "precluded by the existence of an express contract between the parties concerning the same subject matter." *Id.* (quoting *Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. 1st DCA 2008)). However, Federal Rule of Civil Procedure 8 provides, in relevant part, as follows:

> (d)(2) A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements the pleading is sufficient if any of them is sufficient.
> (d)(3) A party may state as many separate claims or defenses as it has, regardless of consistency.

Fed. R. Civ. P. 8(d)(2)-(3). "[N]othing prevents Plaintiff from pursuing alternative claims of breach of contract and unjust enrichment in separate counts." *Intercoastal Realty, Inc. v. Tracy*, 706 F. Supp. 2d 1325, 1332 (S.D. Fla. 2010). An alternatively pleaded unjust enrichment count

only fails upon a showing that an express contract exists. *Thunderwave, Inc. v. Carnival Corp.*, 954 F. Supp. 1562, 1566 (S.D. Fla. 1997). Accordingly, [u]ntil an express contract is proven, a motion to dismiss a claim for . . . unjust enrichment on these grounds is premature. *Williams v. Bear Stearns & Co.*, 725 So. 2d 397, 400 (Fla. 5th DCA 1998). Viewing the complaint in the light most favorable to Napa, and accepting Napa's well-pleaded facts as true, the Court finds that Napa has plausibly pleaded an unjust enrichment claim in the alternative to the breach of contract claim. The Court finds that a determination as to whether Napa has shown that an express contract exists between Napa and Nextran is premature at this stage of the litigation given the multiple alleged and disputed contracts in the case. As such, this topic is better suited for summary judgment or trial, and thus, the Court will revisit this issue at a more appropriate time. Therefore, Nextran's motion to dismiss Count 6 is DENIED.

### G. Fraudulent Misrepresentation/Concealment (Count 7) And Negligent Misrepresentation (Count 8)

Nextran argues that the complaint does not meet the pleading requirements for fraud, in part, because "[t]he alleged wrongful acts were known by NAPA before it signed the contract with Nextran containing the limitation of liability and merger language." (D.E. 14 at 13). In support of its argument, Nextran relies, in part, on *Pettinelli v. Danzig*, 772 F.2d 706 (11th Cir. 1984). The court in *Pettinelli* held that "[w]hen negotiating or attempting to compromise an existing controversy over fraud and dishonesty it is unreasonable to rely on representations made by the allegedly dishonest parties." *Id.* at 710. Napa responds that "this claim does not arise out of the Supplier Agreement and the terms of that Agreement do not control." (D.E. 19 at 12).

A plaintiff must allege four elements to establish a fraudulent misrepresentation claim: (1) a false statement by the defendant concerning a material fact; (2) the defendant's knowledge that the representation was false; (3) that the representation was made by the defendant with the

intent to induce another to act on it; and (4) that the plaintiff suffered a consequent injury in reliance on the representation." *Infante v. Bank of Am. Corp.*, 468 F. App'x 918, 920 (11th Cir. 2012) (citing *Johnson v. Davis*, 480 So. 2d 625, 627 (Fla. 1985)). Napa alleges that Nextran provided Napa with a price quote that contained inflated amounts before it learned of Nextran's unsolicited letter-offer bid to CASA. (D.E. ¶¶ 61–69). As discussed, *supra*, Napa has plausibly alleged Nextran's knowledge, intent to induce CASA to act, and that Napa suffered a consequent injury. The Court finds Nextran's reliance on *Pettinelli* unpersuasive as Napa's claims arise from Nextran's alleged misrepresentations in its initial price quote to Napa, rather than the parties' subsequent supplier agreement. The Court finds that Napa has sufficiently alerted Nextran to the precise misconduct with which they are charged, satisfying the requirement of Rule 9(b). *W. Coast Roofing & Waterproofing, Inc.*, 287 F. App'x at, 86. Viewing the complaint in the light most favorable to Napa, and accepting Napa's well-pleaded facts as true, the Court finds that Napa has plausibly alleged a claim for fraudulent misrepresentation. For the reasons stated, the Court also finds that Napa has plausibly alleged a claim for negligent misrepresentation. The Court notes Nextran's argument that "NAPA would have a hard time alleging that it would not have entered into the transaction with CASA but for the alleged representation," these factors may be appropriately considered at the summary judgement stage or at trial. Accordingly, Nextran's motion to dismiss as to Counts 7 and 8 are hereby DENIED.

**Count 9: Breach of Florida's Deceptive and Unfair Trade Practices Act**

Nextran argues, in part, that "the alleged unfair and deceptive acts occurred almost at the inception of the relationship and months before the parties ever signed a contract." (D.E. 14 at 16). Further, Nextran argues, "the alleged deceptive or unfair act was allegedly known to Napa" and that it still signed a contract with CASA and with Nextran. *Id.* Napa responds that

"the contracts Napa executed were based on Napa's Adjusted Bid, which it was forced to submit as a direct result of Nextran's numerous unfair and deceptive acts." (D.E. 19 at 14).

"An unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." (internal quotations omitted) *PNR, Inc. v. Beacon Prop. Mgmt.*, 842 So. 2d 773, 777 (Fla. 2003) (citing *Samuels v. King Motor Co. of Fort Lauderdale*, 782 So. 2d 489, 499 (Fla. 4th DCA 2001)).

Napa alleges that "Nextran violated Florida's Deceptive and Unfair Trade Practices Act (FDUTPA) by, among other things, quoting Napa an inflated price quote and then using confidential information it learned from Napa to surreptitiously submit the Unsolicited Bid." (D.E. 19 at 14). Viewing the complaint in the light most favorable to Napa, and accepting Napa's well-pleaded facts as true, the Court finds that Napa has plausibly alleged a Florida Deceptive and Unfair Trade Practices Act claim. Nextran's motion to dismiss Count 9 is DENIED.

## IV. CONCLUSION

Based on the foregoing, it is

**ORDERED AND ADJUDGED** that Nextran's motion (D.E. 14) is **DENIED**.

**DONE AND ORDERED** in Chambers, Miami, Florida, this 12th day of July, 2016.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of record